UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL EVANS,<br><br>Plaintiff,<br><br>v.<br><br>BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST and BOARD OF TRUSTEES OF THE BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST,<br><br>Defendants. | No. 2:16-cv-01043-TLN-KJN<br><br>**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Plaintiff Darryl Evans's ("Plaintiff") and Defendants Boilermaker-Blacksmith National Pension Trust and Board of Trustees ("Trustees") of the Boilermaker-Blacksmith National Pension Trust's (collectively, "Defendants") cross-motions for summary judgment. (ECF Nos. 21 and 26.) Each party opposes the other's motion. (ECF Nos. 26 and 27.) For the reasons discussed below, Defendants' Motion for Summary Judgment, (ECF No. 26) is GRANTED. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment, (ECF No. 21).

///

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are largely undisputed. (*See* ECF No. 30.) Plaintiff worked for many years as a welder and is a participant in the Boilermaker-Blacksmith National Pension Trust ("the Plan") based on his work in covered employment between 2001 and 2009. (ECF No. 30 at 2–3.) Under Section 4.09 of the Plan, a participant who becomes "totally and permanently disabled" before the age of 65 may be eligible for a disability retirement benefit. (ECF No. 30 at 2.) However, to qualify for the disability retirement benefit, a participant must have: (a) received a social security disability benefit under Title II of the Social Security Act or a Social Security Supplemental Income disability award; (b) at least 1,000 hours of work in covered employment credited to his account; (c) at least 120 hours of work in covered employment either in the "Plan Credit Year" in which he became totally and permanently disabled or in the year immediately prior, if the application for a disability pension is postmarked or submitted on or after October 1, 2008; *and* (d) filed a written application for benefits in accordance with Section 8.01 of the Plan, together with a notice of award of disability benefits from the Social Security Administration ("the SSA"). (ECF No. 30 at 2–3.) While the Plan defines "Plan Credit Year" as "the period of twelve consecutive months between October 1 of any year and September 30 of the succeeding year," it does not define "totally and permanently disabled." (ECF No. 30 at 3.) The Plan grants the Defendant Board of Trustees discretion to interpret the terms of the Plan. (ECF No. 30 at 11.)

The parties do not dispute that Plaintiff worked more than 1,000 hours in covered employment between 2001 and 2009, including 120 hours of work in covered employment in both 2008 and 2009. (ECF No. 30 at 13.) However, Plaintiff has been completely unable to work since January 2009 due to several disabling conditions affecting his neck, shoulders, back, and spine. (ECF No. 30 at 3, 5–7.) These disabling conditions stem from injuries Plaintiff originally sustained as a Marine in the 1980s and have since worsened over the years. (ECF No. 30 at 4.) Consequently, Plaintiff did not work any hours in covered employment in either 2010 or 2011. (ECF No. 30 at 12.) In or around June 2008, Plaintiff applied for a disability pension benefit under the Southeastern Carpenters and Millwrights Pension Trust (another plan in which he was a participant), and Plaintiff was deemed totally and permanently disabled and awarded a disability

benefit under that plan. (ECF No. 30 at 7.) In March 2010, the U.S. Department of Veteran Affairs ("the VA") approved Plaintiff for "individual unemployability" benefits, backdated to October 2009, based on the determination that Plaintiff was "unable to secure or follow a substantially gainful occupation" due to his disabling conditions. (ECF No. 30 at 4.) The VA based its findings on Plaintiff's medical records from 2009 and 2010 which demonstrated his various conditions. (ECF No. 30 at 4–7.) In January 2015, the SSA awarded Plaintiff SSDI benefits retroactive to December 1, 2011, based on the determination that Plaintiff had been disabled at all times since June 30, 2011. (ECF No. 30 at 7–8.) The SSA evaluated Plaintiff's conditions as of June 30, 2011, based on his SSDI application date and in accordance with the Social Security Act. (ECF No. 30 at 8.) While the SSA did not make any determinations as to whether Plaintiff was disabled at any time prior to June 30, 2011, the Administrative Law Judge ("ALJ") noted that Plaintiff had not earned any income since 2009. (ECF No. 30 at 8.) In awarding Plaintiff his SSDI benefit, the ALJ relied on Plaintiff's medical history, hearing testimony, the VA decision, and the opinion of the benefits administrator for the Southeastern Carpenters and Millwrights Pension Trust. (ECF No. 30 at 9.)

In March 2015, Plaintiff applied for disability pension benefits pursuant to Section 4.09 of the Plan, submitting his SSA determination letter along with other supporting documentation. (ECF No. 30 at 9.) Defendants denied Plaintiff's claim in a letter dated March 24, 2015. (ECF No. 30 at 10.) Citing a disability date of June 30, 2011, based on the SSA's determination, Defendants concluded that Plaintiff did not meet the requirement that a participant have at least 120 hours of work in covered employment either in the "Plan Credit Year" in which he became totally and permanently disabled or in the immediately preceding year. (ECF No. 30 at 10.) Plaintiff appealed Defendants' decision on November 12, 2015, and a Pension Appeals Committee meeting took place on December 21, 2015. (ECF No. 30 at 10–11.) In addition to discussing Plaintiff's appeal, Defendant Trustees also resolved to amend Section 4.09 of the Plan to define the date of total and permanent disability as the date of disability as determined by the SSA or other relevant governmental agency under subsection (a). (ECF No. 30 at 11.) Defendants denied Plaintiff's appeal on December 23, 2015, and based this second denial on the

same reason as the previous denial: that Plaintiff had not accumulated the requisite 120 hours of work in covered employment in either the "Plan Credit Year" in which he became totally and permanently disabled or in the year immediately prior. (ECF No. 30 at 10.)

On May 17, 2016, Plaintiff filed a single-count complaint in this Court, alleging violations of his rights under the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 1 at 7–8.) Plaintiff and Defendants filed cross-motions for summary judgment on February 9, 2017 and February 23, 2017, respectively. (ECF Nos. 21 and 26.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must

demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

**III. ANALYSIS**

Plaintiff moves for summary judgment on his sole claim for disability pension benefits under Section 502(a)(1)(B) of ERISA. (ECF No. 21 at 5.) In so doing, Plaintiff argues Defendants' denial of benefits constitutes an abuse of discretion under *Tapley v. Locals 302 & 612 of the Int'l Union of Operating Engineers-Employers Constr. Indus. Ret. Plan*, 728 F.3d 1134

(9th Cir. 2013).  (ECF No. 21 at 5−6.)

Defendants also seek summary judgment and argue the denial of benefits was proper under the Plan based on their interpretation that "totally and permanently disabled" is determined as of the date of the SSA's determination of disability.  (ECF No. 26 at 7.)  According to Defendants, the phrase "totally and permanently disabled" is ambiguous and their interpretation was reasonable under the analytical framework articulated in *McDaniel v. Chevron Corp.*, 203 F.3d 1099 (9th Cir. 2000).  (ECF No. 26 at 9.)

    A. <u>Standard of Review of Trustees' Decision</u>

Where a plan administrator exercises discretionary powers, such as interpreting ambiguous terms, any resulting denial of a claim by the plan administrator is reviewed by a district court under an abuse of discretion standard.[1]  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers."); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc) (rejecting de novo review in favor of abuse of discretion review under *Firestone*).  "A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable."  *Firestone Tire*, 489 U.S. at 111.  Therefore, "plan administrators should be given the full benefit of the discretion afforded to them by their respective plans in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds." *Hensley v. Nw. Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986, 1001 (9th Cir. 2001), *overruled on other grounds by Abatie*, 458 F.3d at 966–67.

A plan administrator abuses its discretion when it construes the provisions or terms of a plan "in a way that clearly conflicts with the plain language of the Plan, renders nugatory other provisions of the Plan, or lacks any rational nexus to the primary purpose of the Plan." *Tapley*,

---

[1] The parties agree that the Plan grants Defendant discretion to interpret the terms of the Plan. (ECF No. 30 at 11.) Section 8.03 of the Plan provides: "Benefits under this Plan will be paid only if the Trustees and their designees decide, in their discretion, that the applicant is entitled to benefits. The Trustees and their designees shall be the sole judges of the standard of proof required for any application for benefits and shall have full discretion to make findings of fact, interpret the terms of the Plan, and decide all questions arising under the Plan." (ECF No. 20, Part 1 at 62.)

728 F.3d at 1140 (internal quotations and citations omitted). Accordingly, a plan administrator's decision to deny benefits should remain undisturbed under the discretionary standard if it was based on a "reasonable interpretation of the plan's terms and . . . made in good faith." *McDaniel*, 203 F.3d at 1113.

B. <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff argues he is entitled to summary judgment for benefits under the Plan because Defendants abused their discretion by interpreting "totally and permanently disabled" to mean disabled as of the SSA date of disability, which resulted in Defendants concluding that Plaintiff had not worked 120 hours in covered employment in the Plan credit year in which he became totally and permanently disabled. (ECF No. 21 at 13). According to Plaintiff, Defendants' interpretation of the meaning of "totally and permanently disabled" fails all three prongs under *Tapley* in that it: (1) conflicts with the plain language of the Plan; (2) renders a Plan provision nugatory; and (3) lacks a rational nexus to the primary purpose of the Plan. (ECF No. 21 at 13.)

   i. *Whether Defendants' Interpretation Conflicts with the Plain Language of the Plan*

Plaintiff claims that Defendants' interpretation of "totally and permanently disabled" as the SSA date of disability "effectively rewrites the terms of the Plan." (ECF No. 21 at 13.) The explicit language of Section 4.09 of the Plan provides:

> A Participant is entitled to a Disability Pension if he is totally and permanently disabled prior to attaining age 65 provided he:
>
> (a) has been awarded a Social Security Disability Benefit under Title II of the Social Security Act [or] a Social Security Supplemental Income award of disability…; and
>
> (b) has credited to his account at least 1,000 Hours of Work in Covered Employment…; and
>
> (c) for a Participant whose application for a Disability Pension is postmarked or submitted to the Fund Office on or after October 1, 2008, has at least 120 Hours of Work in Covered Employment either in the Plan Credit Year in which he became totally and permanently disabled or in the immediately preceding Plan Credit Year; and
>
> (d) has filed a written application for benefits with the Fund Office in accordance with Section 8.01, together with a notice of award of disability benefits from the Social Security Administration ….

7

(ECF No. 26 at 7–8.) Plaintiff first argues that Defendants' interpretation "conflicts with the plain language of the Plan because the 120-hours requirement contained in subsection 4.09(c) is based on when the participant became 'totally and permanently disabled,' and *not* based on the SSA disability date." (ECF No. 21 at 14.) Rather, Plaintiff contends that "a person of average intelligence would understand the phrase 'permanent and total disability' to mean when a person becomes permanently unable to work due to a disability." (ECF No. 21 at 15.) Defendants respond that the Trustees "have always interpreted and applied the disputed Plan term to be coterminous with the date of disability as determined by" the SSA. (ECF No. 26 at 4.)

Under ERISA, with respect to a contested term, a court begins its inquiry "with the plain language of the Plan, interpreting it in an ordinary and popular sense as would a person of average intelligence and experience." *Tapley*, 728 F.3d at 1140 (internal quotations and citation omitted). A plan administrator or trustee abuses its discretion by interpreting a plan provision in a way that "effectively re-write[s]" the plan. *Id.* at 1141. It is also an abuse of discretion to "impose an additional requirement for eligibility that clashes with the terms of the plan" and results in an "unwarranted and arbitrary construction of the plan." *Canseco v. Constr. Laborers Pension Trust for S. Cal.*, 93 F.3d 600, 608 (9th Cir. 1996) (internal quotations and citation omitted).

Here, Defendants' interpretation of the phrase "totally and permanently disabled" does not conflict with the plain language of the Plan. Standing alone, subsection (c) of the Plan could conceivably be interpreted, as Plaintiff points out, to mean that an individual is entitled to Disability Benefits simply when the individual "has at least 120 Hours of Work in Covered Employment either in the Plan Credit Year in which he became totally and permanently disabled or in the immediately preceding Plan Credit Year." (*See* ECF No. 21 at 8; ECF No. 26 at 8.) However, the plain language of the Plan in its entirety supports Defendants' interpretation. First, the Plan specifically states that a participant is entitled to a Disability Pension provided he "has been awarded a Social Security Disability Benefit under Title II of the Social Security Act [or] a Social Security Supplemental Income award of disability." (ECF No. 26 at 7.) Second, the Plan states that a participant is entitled to a Disability Pension if the participant "has filed a written

8

application for benefits . . . together with a notice of award of disability benefits from the *Social Security Administration*." (ECF No. 26 at 8 (emphasis added).) While subsection (c) of the Plan does not itself discuss SSA benefits, the subsections form a conjunctive list, connected by the word "and." Thus, subsection (c) necessarily incorporates subsections (a) and (d), both of which list an award of disability benefits from the SSA as a prerequisite for disability benefits under the Plan. (*See* ECF No. 26 at 7–8.) Thus, Defendants' interpretation of the Plan does not conflict with the language of subsection (c).

Next, Plaintiff argues that the Plan "impose[s] an additional requirement for eligibility that clashes with the terms of the plan" resulting in an "unwarranted and arbitrary construction of the [P]lan." (ECF No. 21 at 14 (quoting *Canseco*, 93 F.3d at 608).) Plaintiff cites to *Burditt v. W Growers Pension Plan*, 636 F. Supp. 1491, 1498 (C.D. Cal. 1986), *aff'd*, 818 F.2d 698 (9th Cir. 1987), to support this argument. (ECF No. 21 at 14.) In *Burditt*, the court determined that plan administrators "unreasonably relied on additional requirements which [we]re not set forth in the terms of the Plan, and which [could not] readily be inferred from its clear language." *Burditt*, 636 F. Supp. at 1498. Here, however, each requirement of the Plan is clearly delineated in Section 4.09. Neither the "totally and permanently disabled" condition, nor the 120-hour requirement are "additional requirements," but rather, are requirements working together. Thus, the Court is not persuaded by Plaintiff's argument that Defendants' interpretation of the Plan imposes additional requirements not set forth in the Plan itself.

Accordingly, Plaintiff's motion for summary judgment on this basis fails.

    *ii. Whether Defendants' Interpretation Renders a Certain Plan Provision Nugatory*

Plaintiff argues that Defendants' interpretation "conflates two Plan terms into one, thereby rendering a term nugatory." (ECF No. 21 at 15.) When reviewing interpretive challenges for abuse of discretion, a court must "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws." *Dupree v. Holman Prof. Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009) (quoting *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007)). A court must therefore "look to the agreement's language in

context and construe each provision in a manner consistent with the whole such that none is rendered nugatory." *Id.*

Here, Plaintiff argues that the Trustee's interpretation of the Plan conflates subsection 4.09(a), requiring an SSDI award, and subsection 4.09(c), requiring 120 hours of work in covered employment in the Plan credit year in which the participant became "totally and permanently disabled," or in the immediately preceding Plan credit year. (ECF No. 21 at 16.) Plaintiff contends that Defendants' interpretation of the phrase "totally and permanently disabled" renders subsection 4.09(c) nugatory because while "for some individuals the date they become totally and permanently disabled may be the same or similar to their SSDI date of disability, this is not necessarily the case." (ECF No. 21 at 16.)

Plaintiff's argument is unpersuasive. First, as the Court addressed above, the subsections within the Plan are not standalone sections, but must each be individually satisfied to obtain Disability Benefits under the Plan. Second, as Defendants point out, a finding in Plaintiff's favor "would render meaningless the threshold requirement for any Disability Benefit under the Plan: a disability finding by the SSA," as subsections (a) and (d) require a SSA determination of disability. (ECF No. 26 at 13.) Because the subsections must each be individually satisfied, any determination by this Court for Plaintiff would render these subsections nugatory. Accordingly, the Trustees reasonably interpreted "totally and permanently disabled" so as not to render subsections (a) and (d) of the Plan nugatory. Thus, Plaintiff's argument on this basis fails.

*iii. Whether Defendants' Interpretation Lacks a Rational Nexus to the Plan Purpose*

Plaintiff argues Defendants' interpretation "is contrary to the very purpose of the 120-hour requirement contained in [subs]ection 4.09(c) [of the Plan]." (ECF No. 21 at 16.) As an initial matter, Defendants state that the purpose of the Plan is "providing benefits to eligible participants who have worked sufficient number of hours in boilermaker employment covered by the Plan to qualify for the various types of benefits it provides." (ECF No. 26 at 3.) Plaintiff claims that his request to access a Disability Benefit is within the Plan purpose because "he worked in covered employment between 2001 and 2009 . . . and he became completely unable to work due to his

10

disabling conditions in 2009." (ECF No. 21 at 16.)  Plaintiff contends that "[b]ased on a plain reading of the Plan language, it is evident that the purpose of the 120-hour requirement is to limit disability pension eligibility to participants who become totally and permanently disabled while working in covered employment, or shortly thereafter."  (ECF No. 21 at 16.)

"[T]here should be some rational nexus between the trustees' interpretation of the [Plan] and the policy to be furthered thereby."  *Burditt*, 636 F. Supp. at 1497.  Here, the policy to be furthered is "providing benefits to eligible participants who have worked sufficient number of hours in boilermaker employment covered by the Plan to qualify for the various types of benefits it provides."  (ECF No. 26 at 3.)  Defendants explain that the underlying purpose of requiring the SSA determination is to "eliminate[] the need for the Plan to make an independent determination of whether a Participant is totally and permanently disabled."  (ECF No. 26 at 5.)  Defendants contend Plaintiff's argument "would defeat the underlying purpose for which this requirement is imposed, since the Plan would be compelled to examine the circumstances of each case, and to determine whether a different disability date should be imposed other than the date fixed by the SSA."  (ECF No. 26 at 5.)  Thereby, Defendants interpretation provides a reasonable nexus to providing benefits to qualifying participants.

The Court finds that Defendants' interpretation was not unreasonable, and did not conflict with the plain language of the Plan, render a Plan provision nugatory, or lack a rational nexus to the primary purpose of the Plan.  Accordingly, Plaintiff's motion for summary judgment is denied.

C. <u>Defendants' Motion</u>

Defendants contend that because the phrase "totally and permanently disabled" is ambiguous, they had discretion to interpret the term and their interpretation was reasonable under *McDaniel*.  (ECF No. 26 at 7.)  The Court will first address whether the term is ambiguous, and then whether Defendants' interpretation of the term was reasonable under *McDaniel*.

      i. *Whether the Term "Totally and Permanently Disabled" is Ambiguous*

Defendants argue the term "totally and permanently disabled" is ambiguous as it is not defined in the Plan and there is no "ordinary and popular" meaning for the term.  (ECF No. 29 at

3.) Plaintiff responds that the phrase has a "plain and unambiguous meaning." (ECF No. 27 at 8.)

"An ambiguity exists when the terms or words of a pension plan are subject to more than one reasonable interpretation." *McDaniel*, 203 F.3d at 1110; *see also Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.") "[O]nly by excluding all alternative readings as unreasonable may [a court] find that a plan's language is plain and unambiguous." *McDaniel*, 203 F.3d at 1110. The Plan does not provide a clear definition for "totally and permanently disabled." Further, as evidenced by the parties' competing definitions, the term is susceptible to multiple competing interpretations. (*See* ECF No. 27 at 3; ECF No. 29 at 3.) Moreover, as stated above, the Court has determined that Defendants' interpretation was not unreasonable. Therefore, the Court finds the term to be ambiguous and more appropriately analyzed under *McDaniel*.

    *ii.* *Whether Defendants' Interpretation was Reasonable*

When parties disagree over the meaning of a term, a court looks "to the explicit language of the agreement to determine the clear intent of the parties[,]" which can only be "understood in light of the context that gave rise to its inclusion." *McDaniel*, 203 F.3d at 1110 (citations omitted). Moreover, where a term is deemed ambiguous—as is the case here—a court will typically look to extrinsic evidence to determine the parties' intent. *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 2007). As provided above, in the context of an ERISA plan, where the interpreted language is ambiguous and the plan confers power on the plan administrators to make eligibility determinations, "[d]eference is particularly weighty." *Tapley*, 728 F.3d at 1139 (citation omitted).

Defendants maintain they have consistently interpreted the term to mean "the same date as determined by the SSA for a participant's disability." (ECF No. 26 at 8.) Defendants point out the 1,000-hour requirement imposed by Section 4.09(b) is waived for a participant "whose first Hour of Work in Covered Employment is prior to October 1, 2003, who has at least 15 years of Pension Credit, has had a contribution made on his behalf, *and who becomes totally and*

12

*permanently disabled in accordance with Subsection (a) . . . .*" (ECF No. 26 at 8 (emphasis added).) From this, it is evident that Defendants considered when an hour requirement could be waived, and even in that situation, required a Participant to show a SSA determination of disability and award. Based on this language, Defendants' interpretation of the term as coterminous with the date of SSA disability is reasonable in the context of the plan as a whole. Thus, Defendants' interpretation was reasonable and should remain undisturbed as a proper exercise of discretion. Accordingly, Defendants' motion for summary judgment is granted.

### D. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment. (ECF No. 26.) Plaintiff's Motion for Summary Judgment, (ECF No. 21), is DENIED. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: February 28, 2019

Troy L. Nunley
United States District Judge